# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA
## CIVIL DIVISION

**OFFICE OF THE ATTORNEY GENERAL,**
**STATE OF FLORIDA,**
**DEPARTMENT OF LEGAL AFFAIRS,**

> Plaintiff,

**v.**

**CASE NO:**
**DIVISION:**

**ALLIANCE MOVING AND STORAGE LLC**,
a Florida limited liability company, f/k/a
FALCONE CONSULTING GROUP LLC d/b/a
ATLAS MOVING AND STORAGE LLC;
**AMERICAN WIDE RELOCATION INC**, a
Florida corporation d/b/a National Express Van
Lines; **FIRST PRIORITY VAN LINES LLC**, a
Florida limited liability company; **AMERICAN
MOVERS AND STORAGE LLC**, a Georgia
limited liability company; and **RICHARD
FALCONE**, an individual,

> Defendants.

_____/

## COMPLAINT

Plaintiff, **Office of the Attorney General, State of Florida, Department of
Legal Affairs** (the "Attorney General" or "Plaintiff"), sues **Alliance Moving and
Storage LLC**, a Florida limited liability company f/k/a Falcone Consulting Group
LLC d/b/a Atlas Moving and Storage LLC; **American Wide Relocation Inc**, a
Florida corporation d/b/a National Express Van Lines; **First Priority Van Lines
LLC**, a Florida limited liability corporation; **American Movers and Storage LLC**,

a Georgia limited liability company(collectively, the "Corporate Defendants"); and **Richard Falcone**, an individual (and together with the Corporate Defendants collectively, "Defendants"[1]), and alleges the following:

## JURISDICTION AND VENUE

1.      This is an action for injunctive relief, consumer restitution, civil penalties, attorney's fees and costs, and other statutory and equitable relief against Defendants, brought pursuant to Sections 501.207(1)(b) and 501.207(3), Florida Statutes.

2.      This Court has subject matter jurisdiction pursuant to the provisions of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (hereinafter referred to as "FDUTPA").  The Attorney General seeks relief in an amount greater than Fifty Thousand Dollars ($50,000), exclusive of fees and costs.

3.      The statutory violations alleged in this complaint ("Complaint") occurred in, and/or affect, more than one judicial circuit, including the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

4.      Venue is proper in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida pursuant to Section 47.011, Florida Statutes

---

[1] The defined term "Defendants" shall be synonymous with the term "Moving Enterprise".

2

given that the statutory violations alleged herein have occurred or accrued, in part, in Palm Beach County, Florida; many of the Corporate Defendants' principal place of business has been in Palm Beach County at all times material to this action; and Falcone resides in Palm Beach County, Florida.

5.    The Attorney General has conducted an investigation into the matters alleged herein, and the head of the enforcing authority has determined that this enforcement action serves the public interest.

6.    All conditions precedent to this action have been performed or have occurred within four (4) years of the filing of this action.

## THE PLAINTIFF

7.    The Attorney General is an enforcing authority of FDUTPA as defined in 501.203(2), Florida Statutes, and is authorized to bring this action seeking equitable, injunctive and other statutory relief, including restitution and civil penalties, pursuant to FDUTPA.

8.    The Attorney General is also authorized to seek civil penalties and attorney's fees and costs pursuant to Sections 501.2075, 501.2077, and 501.2105, Florida Statutes.

## THE DEFENDANTS

**A.    Alliance Moving and Storage LLC f/k/a Falcone Consulting Group LLC d/b/a Atlas Moving and Storage LLC**

9.    Falcone Consulting Group LLC ("Falcone Consulting") is a Florida

limited liability company organized by Falcone in 2017, and until 2020 when it changed its name to Alliance Moving and Storage LLC ("Alliance"), its principal place of business was in Palm Beach County, Florida.

10.     Falcone Consulting registered the following fictitious name with the Florida Department of State Division of Corporations ("Florida Division of Corporations") in 2019 and did business under this name: Atlas Moving and Storage LLC.

11.     Falcone Consulting changed its name with the Florida Division of Corporations to Alliance Moving and Storage LLC, a Florida limited liability company (defined above as "Alliance") in 2020, and the amendment to the articles of organization effectuating such change was signed by Falcone.

12.     At all times relevant to this action, Falcone was the manager of Falcone Consulting including after the change of its name to Alliance in 2020.

13.     Starting in 2020, Alliance's principal place of business was located in Broward County, Florida, and prior to that it was located in Palm Beach County, Florida.

**B.     American Wide Relocation Inc**

14.     American Wide Relocation Inc ("American Wide Relocation") is a Florida corporation and at all times relevant to this action, its principal place of business was located in Palm Beach County, Florida.

4

15.     As of May of 2017, Falcone identified himself as the President of American Wide Relocation.

16.     According to filings with the Florida Division of Corporations, at all times relevant to this action, Falcone Consulting was the owner of American Wide Relocation.

17.     American Wide Relocation registered the following fictitious names with the Florida Division of Corporations in 2018: National Express Van Lines and First Priority Van Lines.

18.     Falcone electronically signed the fictitious name application on behalf of American Wide Relocation for the "National Express Van Lines" fictitious name.

19.     According to forms submitted to the United States Department of Transportation ("DOT"), American Wide Relocation also does business as Atlas Moving and Storage.

**C.     First Priority Van Lines LLC**

20.     First Priority Van Lines LLC ("First Priority Van Lines") is a Florida limited liability corporation and at all times relevant to this action, its principal place of business was located in Palm Beach County, Florida.

21.     According to filings with the Florida Division of Corporations, at all times relevant to this action, Falcone Consulting was the manager of First Priority

Van Lines.

22.     According to forms submitted to the DOT, Falcone identified himself as the owner of First Priority Van Lines.

**D.     American Movers and Storage LLC**

23.     American Movers and Storage LLC ("American Movers") is a Georgia limited liability company and at all times relevant to this action, its principal place of business was identified as being located in Macon, Georgia; however, at a minimum, American Movers conducted portions of its at issue business practices or acts in Florida.

24.     According to the Articles of Organization for American Movers, Falcone Consulting was one of the "organizers" of this company.

25.     Falcone identified himself as the owner of American Movers in forms/applications submitted to the DOT in 2019.

**E.     Richard Falcone**

26.     Falcone is an individual residing in Palm Beach County, Florida.

27.     At all times relevant to this action, Falcone, whether acting alone or in concert with others, directly participated in the unfair and deceptive acts and practices of the Corporate Defendants set forth in this Complaint, and/or controlled or had the ability to control, and had knowledge of, the actions and practices of the Corporate Defendants.

6

28.     Falcone individually registered the following fictitious name with the Florida Division of Corporations in 2018: National Express Van Lines.

**F.     All Defendants**

29.     At all times material hereto, Defendants engaged in "trade or commerce" as defined in Section 501.203(8), Florida Statutes, by being engaged in the business of marketing and providing residential household goods moving services, including but not limited to residential household goods moving brokerage services, to Florida consumers and consumers throughout the United States.

## FACTS RELEVANT TO THE COMPLAINT

30.     Since 2018, the Attorney General has gathered and reviewed complaints from at least one-hundred and fifty (150) consumers concerning Defendants' business practices, which collectively allege over one-million dollars ($1,000,000) paid by consumers to the Moving Enterprise for at-issue moving-related services.

31.     The allegations in the consumer complaints include, but are not limited to, assertions that (i) consumers were misled to believe that the Moving Enterprise would actually perform the move rather than a third-party mover (a/k/a the carrier); (ii) just prior to the scheduled move date, the price of the move is increased from the estimate provided by the Moving Enterprise, or the price is increased on the date of the move; (iii) the price of the move was drastically

7

increased after the carrier loaded the consumer's household goods onto the moving truck; (iv) the Moving Enterprise failed to substantively respond to the consumers' requests for refunds or to provide such refunds, even if the move was not performed, and even when the carrier did not show up to perform the move when promised; (v) the Moving Enterprise failed to substantively respond to consumers' requests to cancel their move; (vi) consumers were unable to communicate with anyone at the Moving Enterprise and their calls or emails would go unanswered or unresponded to, including during the cancellation period, which was frequently forty-eight (48) hours, and subsequently the Moving Enterprise would refuse consumer refunds on the basis that the consumer failed to request the refund within the cancellation time-period; (vii) consumers did not receive their household goods timely; and (viii) consumers never received their household goods after they were picked up by the carrier.

32.    The Moving Enterprise has made various representations to consumers that they actually perform the move of household goods, as opposed to serving as a moving broker, which caused consumers to believe the Moving Enterprise would perform the move – be the carrier.  Such representations by the Moving Enterprise, include, but are not limited to the following:

    a.    In documents sent from Alliance to consumers, Alliance represents itself as "the preferred movers in your area.  Alliance Moving and

8

Storage is a licensed, bonded, and insured moving company."

b.     Alliance also refers to itself as a "long distance, full service moving company" and its website states, "we are able to transport your household goods, motorcycle, jet ski, boat, etc., safely & professionally" and "our business is moving your business."

c.     American Wide Relocation's and First Priority Van Lines's websites both state, "we will handle your move with diligence and the same applied care throughout the relocation process" and "[w]e offer a full range of services to assist you in moving your home, office or relocating across a longer distance."

d.     American Movers' website states, "we treat your items like they were our own and give it the utmost attention to safeguard the quality of your inventory" and also discusses how it will "safely pack" and "carefully unpack" the items.

e.     During phone calls with consumers, the Moving Enterprise failed to disclose that they were merely a moving broker.

33.     Despite representations that the estimate cost would be "over estimated," many consumers complained that the estimate received from the Moving Enterprise was too low, and the price was subsequently increased – frequently on the day of the move.

34.     The Moving Enterprise also enticed consumers to choose them as they told consumers that a truck is going to be in their area which allows for them to receive a "deep discount," but the price is subsequently increased.

35.     The Moving Enterprise assured consumers that they would receive a high-quality professional move and exceptional customer service, and some examples of these representations are as follows:

a.     The moving estimate provided to consumers states that they will receive, "Professional Door to Door service;"

b.     Alliance, First Priority, American Wide and American Movers all claimed to have "24/7" customer service;

c.     In its communications with consumers, Alliance further states that "we understand moving can be stressful, that is why we have 24/7 customer service where you will reach a live person at anytime of the day even after hours **that's a guarantee**" (emphasis added);

d.     Alliance tells consumers it has fifteen (15) years of experience handling residential moves;

e.     Alliance states on its website that it offers "homeowners the utmost professional residential moving services" and "premium quality moving services at the most affordable rates to beat our competitors;"

f.     Alliance also states that it has a "state of the art system [that] is

10

designed to capture the weight of your items and over estimate your household goods. Nobody beats our services offered";

g.     First Priority's website states that it has "Over 20 Years of Experience" and

h.     American Wide Relocation and First Priority Van Lines represent that, "[o]ur clients enjoy our team's dedication to perfection. We treat your items like they were our own and give it the utmost attention to safeguard the quality of your inventory" and "Satisfaction Guarantee: We will surpass your expectations in both quality of service and productivity."

36.     Below is an example of correspondence from Alliance to a consumer, which includes many of the misrepresentations described above:

DearKelli ▮▮▮▮
Thank you for inquiring with **Alliance Moving and Storage** for your long distance move.

**Alliance Moving and Storage** is a long distance, full service moving company. Our carriers are fully licensed, bonded and Insured. We have 15 years of experience handling residential moves just like yours, specializing in state-to-state household relocation services.

Our state of the art system is designed to capture the weight of your items and over estimate your household goods. Nobody beats our services offered!

We understand moving can be stressful, that is why we have **24/7 customer service** where you will reach a live person at anytime of the day even after hours that's a guarantee.

MAKE SURE TO ASK YOUR MOVING COORDINATOR ABOUT DISCOUNTS AND PROMOTIONS.

Click on the job Number 5452905 in order to view or alter your personal information and the inventory list.

Sincerely,
**Alliance Moving and Storage**
Phone: **888-278-8149**
Fax:
Email address: info@movingservicegroup.com
Web address: Alliancemoving.co
US DOT: **3241129** MC: **1018040**

37.     However, consumers actually received very poor customer service and after they paid their initial deposit to the Moving Enterprise, many consumers could not reach anyone at the Moving Enterprise to address their questions or concerns, receive a refund or to cancel their move.

38.     On many occasions, the Moving Enterprise promised consumers that the move would occur on a specific date or range of dates, and this failed to happen as many consumers faced a "no show" by the carrier at such time.

39.     Additionally, consumers did not receive the professional move they had expected.

40.     For example, based on representations by the Moving Enterprise, many consumers expected a professional moving truck to arrive to move their items, however, frequently only a rental truck was used for the move.

41.     Consumers also reported that the Moving Enterprise failed to deliver their household items on the promised date certain or within a promised timeline.

42.     Consumers also reported that their items were damaged during the move or lost all together.

**The Defendants Acted as a Common Enterprise**

43.     Falcone and the Corporate Defendants (collectively, the "Moving Enterprise") have been conducting the business practices described herein through an interrelated network of companies – the Corporate Defendants – that share

certain addresses, share employees, use the same email domain, operate under common control, commingle funds, transfer funds to each other, and some of the Corporate Defendants coordinate marketing efforts, including, but not limited to having nearly identical websites.

44.     The Corporate Defendants are commonly controlled by either Falcone or his company, Falcone Consulting, which is now known as Alliance due to a name change in 2020.

45.     According to filings with the Florida Division of Corporations, either Falone or Falcone Consulting are the managing member or owner of the following moving companies: Alliance, American Wide Relocation, and First Priority Van Lines.

46.     According to filings with the Georgia Secretary of State, Falcone Consulting is an organizer of American Movers, and Falcone has signed other records stating that he is an owner of American Movers.

47.     Many members of the Moving Enterprise used common addresses, and below are some examples:

        a.     American Wide Relocation, American Movers, and Falcone Consulting Group identified either their principal place of business or their mailing address as 860 US Highway 1 (a/k/a Federal Highway), North Palm Beach, FL; and

b.     First Priority Van Lines identified its principal address as 411 7th Street, West Palm Beach, FL, and Falcone identified this as his address in the fictitious name application for his use of the name "National Express Van Lines".

48.     At a minimum, Falcone individually signed corporate records on behalf of Alliance (and its predecessor Falcone Consulting) and American Wide Relocation.

49.     On behalf of First Priority Van Lines and American Movers, respectively, as their "owner," Falcone individually signed forms submitted to the DOT which are used to register the company or to apply for a DOT number.

50.     The Moving Enterprise's documents reveal that they used phone numbers, fax numbers and email addresses interchangeably.

51.     Bank records reveal that the Moving Enterprise intermingles funds, pays many of the same employees, and pay each other's expenses.

52.     Falcone is the authorized signer on bank accounts, and therefore controls the accounts, in the name of Alliance Moving and Storage LLC; Falcone Consulting Group d/b/a First Priority Van Lines LLC; Falcone Consulting Group LLC; American Movers and Storage; American Wide Relocation; and American Wide Relocation d/b/a First Priority Van Lines.

53.     The Moving Enterprise's documents reveal that they used company

14

names interchangeably and were involved in each other's businesses, and the following are some examples of this:

a.  moving estimates sent from Alliance to consumers refer to First Priority Van Lines as being a party to such agreement;

b.  moving estimates from both Alliance and Atlas Moving (a fictitious name for d/b/a of American Wide Relocation and Falcone Consulting) to consumers state that the billing will be reflected under the name Alliance or American Movers;

c.  American Movers served as the merchant and collected payments from consumers on behalf of at least some of the Corporate Defendants;

d.  American Movers disputed chargebacks on behalf of Atlas Movers; and

e.  Falcone signed forms on behalf of American Wide using contact information for First Priority Van Lines.

54.  Multiple companies in the Moving Enterprise, including but not limited to First Priority Van Lines and American Wide Relocation, have used the same website template and identical language in variations of their website.  One example is below:





55.     First Priority Van Lines, American Movers, and American Wide

Relocation have consumer testimonials on their websites that are exact replicas of

each other, including the same consumer names, pictures and testimonials.

56.     As another example, American Movers and American Wide Relocation have verbatim language on their websites regarding the enumerated "Four Steps" the company takes regarding, "Assessing your Needs," "Securing the Right Team," "Safely Pack," and "Carefully Unpack."

57.     Multiple companies in the Moving Enterprise have used the same employees to conduct their business.

58.     As a result of their common enterprise, each Corporate Defendant is jointly and severally liable for the acts and practices alleged herein.

59.     Additionally, Falcone has directed, controlled, and had the authority to control, and participated in the acts and practices of the Corporate Defendants. Therefore, Falcone is jointly and severally liable for the acts and practices alleged herein.

<u>**THE FLORIDA DECEPTIVE**</u>
<u>**AND UNFAIR TRADE PRACTICES ACT**</u>

60.     Section 501.204(1), Florida Statutes states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

61.     Section 501.203(3)(c) of FDUTPA further establishes that a violation of "any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" is a

violation of FDUTPA.

62.     Section 501.203(8), Florida Statutes, defines "[t]rade or commerce" as:

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

63.     The provisions of FDUTPA shall be "construed liberally" to promote and "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

64.     A person that willfully engages in a deceptive or unfair act or practice is liable for a civil penalty of Ten Thousand Dollars ($10,000) for each such violation, pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation victimizing a senior citizen, pursuant to Section 501.2077, Florida Statutes. Willful violations occur when the person knew or should have known that the conduct in question was deceptive or unfair or prohibited by rule, pursuant to Section 501.2075, Florida Statutes.

## COUNT I
## AGAINST ALL DEFENDANTS
## (Violation of Chapter 501, Part II, Florida Statutes)

65.     The Attorney General incorporates and re-alleges the preceding

paragraphs as if fully set forth herein.

66.     As further set forth in paragraphs 30-42 above, the Moving Enterprise

violated FDUTPA when it engaged in the following deceptive and unfair trade

practices or acts: (i) misleading consumers to reasonably believe that the Moving

Enterprise would perform the move rather than a third-party carrier; (ii) just prior

to the scheduled move date, increasing the price of the move from the estimate

provided, or increasing the price of the move on the date of the move; (iii)

increasing the price of the move after the consumer's household goods were loaded

onto the moving truck; (iv) misleading consumers to reasonably believe that the

Moving Enterprise will provide a high quality professional move and exceptional

customer service; (v) failing to substantively respond to consumers' requests for

refunds or requests to cancel their move and failing to provide such refunds; (vi)

failing to timely deliver the household goods or to ensure the timely delivery

thereof; and (vii) failing to deliver the household goods or to ensure the delivery

thereof.

67.     Through the actions and related business practices set forth in this

Complaint, the Moving Enterprise engaged in representations, acts, practices or

19

omissions that are material, and that are likely to mislead consumers acting reasonably under the circumstances.

68.    Through the actions and related business practices set forth in this Complaint, the Moving Enterprise has engaged in acts or practices in trade or commerce that shock the conscience.

69.    Through the actions and related business practices set forth in this Complaint, the Moving Enterprise has engaged in acts or practices in trade or commerce that offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers.

70.    Through the actions and related business practices set forth in this Complaint, the Moving Enterprise has engaged in acts or practices that are likely to cause substantial injury to consumers. This substantial injury is not reasonably avoidable by the consumers themselves and is not outweighed by countervailing benefits to consumers or competition.

71.    Accordingly, the Moving Enterprise has engaged in unfair or deceptive or unconscionable acts or unconscionable practices in the conduct of trade or commerce in violation of Section 501.204(1), Florida Statutes.

72.    Under FDUTPA, once corporate liability is established, an individual defendant may be individually liable if he participated directly in the deceptive or unfair practices or acts, or he possessed the authority to control them and had some

knowledge of such practices or acts.

73.     Upon information and belief, during all times relevant to this action, (i) Falcone or his company that he controlled, Falcone Consulting, has been the owner or managing member of all of the Corporate Defendants; (ii) Falcone has controlled the day-to-day operations of the Corporate Defendants; (iii) Falcone has controlled the Corporate Defendants' bank accounts; (iv) Falcone has submitted forms to the DOT, such as to register the company or receive a DOT number, as the owner of select Corporate Defendants; (v) Falcone, individually, has signed corporate records on behalf of Alliance (and its predecessor Falcone Consulting) and American Wide Relocation, and (vi) Falcone registered fictitious names on behalf of certain Corporate Defendants or himself.

74.     Therefore, Falcone is individually liable under FDUTPA for the unfair and deceptive acts referenced above in paragraphs 30-42 because he either directly participated in, controlled or had the authority to control and had some knowledge of such acts or practices.

75.     The Moving Enterprise is subject to civil penalties for willful violations of FDUTPA in the amount of Ten Thousand Dollars ($10,000) for each violation pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize, a senior citizen pursuant to Section 501.2077, Florida Statutes.

76.     The Moving Enterprise willfully engaged in and could continue to engage in deceptive and unfair acts and practices in that the Moving Enterprise knew or should have known that the methods, acts or practices alleged herein were and are unfair, deceptive, unconscionable and prohibited by law.

77.     These above-described acts and practices of the Moving Enterprise have caused substantial injury to the public and will likely continue to cause injury and prejudice the public.

78.     Unless the Moving Enterprise is temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, the Moving Enterprise's actions will continue to result in irreparable injury to the public for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Office of the Attorney General, State of Florida, Department of Legal Affairs, prays that the Court provide the following relief:

A.     Pursuant to Section 501.207(1)(b), Florida Statutes, permanently enjoin the Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, who receive actual notice of the injunction, from (i) engaging in the unfair and deceptive practices alleged above, and any similar acts and practices, relating to offering or providing residential

moving related services, and (ii) engaging in, providing, soliciting or offering any residential moving related service, specifically including moving brokering services, within the State of Florida or to Florida consumers;

B.      Enter a judgment in favor of the Attorney General against Defendants, jointly and severally, for violations of FDUTPA.

C.      Award against Defendants, jointly and severally, such legal, equitable, or other relief as is just and appropriate pursuant to Section 501.207(3), Florida Statutes, including but not limited to restitution to consumers and disgorgement of all ill-gotten gains;

D.      Assess against Defendants, jointly and severally, civil penalties in the amount of Ten Thousand Dollars ($10,000) for each violation accordance with Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize, a senior citizen in accordance with Section 501.277, Florida Statutes;

E.      Award the Attorney General reasonable attorneys' fees and costs pursuant to the provisions of Section 501.2105 and 501.2075, Florida Statutes, against the Defendants, jointly and severally, and as otherwise allowable by applicable statutes or law; and

23

F.    Award such other and further relief as the Court deems just and proper, including all equitable relief allowed pursuant to Sections 501.207(3), Florida Statutes.

Dated this 4th day of June 2024.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Jennifer Hayes Pinder*
Jennifer Hayes Pinder
Bureau Chief, Tampa
Florida Bar No. 017325
Jennifer.pinder@myfloridalegal.com

Office of the Attorney General
Department of Legal Affairs
3507 E. Frontage Road, Suite 325
Tampa, Florida 33607
(813) 287-7950 (telephone)
(813) 281-5515 (facsimile)